Good morning. My name is John Bartlett. I am the attorney for Susan Griffin, who is the appellant in this particular action. And in the short time I have, I'd like to get right to the point and address the reasons why I believe the decision of the Bankruptcy Appellate Panel, which we're appealing, is erroneous as a matter of law and should be reversed. The BAP's decision was grounded on the conclusion that the State court judgment that my client obtained against Defendant Wardrobe, the debtor in the case, with the exception of the determination of damages anyway, was obtained in a manner that exceeded the scope of the stay relief requested, as well as the order granting the stay relief issued by the Bankruptcy Court judge. Now, the BAP reached the conclusion, erroneously in my opinion, by too narrowly construing the scope of relief being requested in the motion for stay relief, and really by misconstruing or not giving proper credence to the language set forth in Judge Zive's order granting the relief from the stay. The BAP really wrongly criticized Judge Zive, in my opinion, for his order granting the relief, saying that believing it was beyond the scope of the stay relief requested. However, these arguments were presented to Judge Zive at the trial of his case, if you will, which actually ended up being a motion for summary judgment. And Judge Zive explained, interpreted his own stay relief order, and concluded that the State court judgment that Ms. Griffin obtained was within the scope of the stay relief order that he issued, because he believed that the stay relief order, and what was really being requested, was that Ms. Griffin could proceed to litigate her claim against Mr. Wardrobe in the State court and obtain a personal judgment against him. Now, he didn't limit the legal theory that Ms. Griffin was proceeding simply to a contract cause of action. He basically said, Ms. Griffin, you can proceed with your State court action, obtain a judgment. You just can't enforce it against Mr. Wardrobe without further order of the Bankruptcy Court. My question was, is it that clear that the application for relief from stay was directed toward a relief, pursuing a cause of action against Wardrobe? Well, it is definitely true that at the time the motion for stay relief was filed, the primary focus at that time was on the possibility that there may be a recovery for these damages, if proven, from a third-party surety company. And it is true that there is nothing mentioned in the motion for stay relief about changing the theory of liability to something other than a contract theory. However, if that is the standard, then that raises troubling implications, it seems to me, for anyone seeking stay relief to pursue a claim for damages against the debtor in a State court, because, as I'm sure you all know, in the course of the litigation, facts may come out that weren't apparent when the case started that may give rise to a different theory of recovery. And how is someone like Ms. Griffin or any other litigant supposed to guess how this case is going to end up, you know, what facts are going to come out when this case is fully litigated that may give rise to a different theory of liability under the same transaction recurrence that's been alleged in the complaint? Suppose the case stands the way it is now. Is there anything to prevent your client from seeking a determination in bankruptcy court that the debt is nondischargeable? No, because the bankruptcy appellate panel remanded the case to Judge Zai for basically a trial on that point as to whether this If you're successful on that point, then the whole claim is outside of bankruptcy, correct?  It's not discharged. And would you be free to pursue the claim in State court at that point? Well, we have a State court judgment now. Would you be free to execute on that judgment? Yes. Okay. So what's wrong with that? Well, the problem with that is a couple of things. Number one, the bankruptcy appellate panel didn't exactly say that, you know, we have to relitigate the damage issue all over again. They said that, well, maybe the damage issue is okay. It's just that the legal theory of fraud is not okay. So that forces my client to have to relitigate that issue all over again, which, you know, additional costs and expense when Mr. Wardrobe pretty much defaulted on it when the State court action went forward, and now he's getting a chance to do a do-over in the bankruptcy court. So, I mean, that Okay. What happened? I'm a little murky as to what happened in trying to pursue the sureties. My understanding, Your Honor, and I wasn't representing Ms. Griffin in that part, but my understanding was that, as it turned out, the surety companies apparently had a defense or were determined before the trial anyway that they weren't liable or was agreed that they weren't going to be responsible for any damages against Mr. Wardrobe. And I think that had something to do with the fact, but I don't know for sure, and there's nothing in the record that explains it. But my understanding is that Mr. Wardrobe may have been acting beyond the scope of his contract with license, and that's why he wasn't going to have coverage. Okay. In any event, there was no ---- Correct. It's apparent that there was no recovery. Right. And those parties have been dismissed, I think, by the time of trial. Okay. So, again, I think the ---- getting back to the point that, yes, we can go back to bankruptcy court and litigate this thing all over again and expend the cost on attorney's fees and so on and so forth in time, which my clients already expended many thousands of dollars pursuing it to this point. But, Your Honor, I think ---- Do you have to prove damages to obtain a determination of non-dischargeability? Well, if you don't have damages, there's nothing much to collect. I mean, you need to at least come up with a damage award or an amount of your claim that you're going to have declared. I'm responding to your argument that you have to try the whole thing over again. Well, I'm not sure that ---- My understanding of bankruptcy law is if you can establish that the debt arose because of fraud, you can obtain a determination of non-dischargeability. Am I wrong about that? Well, I believe you're correct. But I believe what would happen, or at least what tends to happen is, is that the issue not only of the dischargeability of the claim, you know, if it falls into one of those categories, gets litigated in a dischargeability action. But in many cases, the actual damage award also gets litigated as part of all of that. Well, in a classic fraud situation, that would be true. Right. But I'm not sure what you're really trying to get at. But I guess the point is, if we have to go back, if we get a determination that this claim is a fraud claim, and then we have to go back to what, State court and get another judgment for damages? I mean, I don't ---- Well, if the State court judgment, a default judgment, and it was kind of a kitchen sink judgment, had everything in it that you could think of. Right. With a defaulting defendant. If that is in excess of the stay order, how does it get preclusive effect in the bankruptcy court? Well, Your Honor, basically the answer to that is I don't think that the State court judgment Ms. Griffin obtained was beyond the scope of the stay relief order. But obviously, if it is, then, I mean, then the question is, is the State court order enforceable? Well, obviously, if the judgment is discharged, it's not enforceable. If you go to the bankruptcy court and get an order saying that the claim is a nondischargeable claim, you still have to establish how much the claim is, it seems to me. Because, for example, Judge Zai throughout the punitive damage part of the claim is saying that's discharged. So it seems to me as part of any dischargeability action, you also have to establish how much of the ---- how much the claim is as nondischargeable, as all part and parcel of it. Okay. Any further questions? Anyway, just to sum up, I think the important ---- the important thing, I think, to focus on here is not so much, yeah, we can go back to bankruptcy court and litigate this. The problem I have ---- the real problem I have with the bankruptcy appellate panel's decision is what do you do as a litigant seeking stay relief to proceed with a State court action? Do you have to identify all the possible theories that might come up? And I think the thing that we focus on is what Judge Zai have interpreted his own order to authorize. And he believed that his order authorized Ms. Griffin to go to State court and obtain a judgment on whatever legal theory she could prove in that court and that she had to come back to bankruptcy court if she wanted to enforce it against Mr. Wardrobe or property of the estate personally. And that's exactly what we did in this case. Thank you. Good morning. My name is James Demetrius. I'm representing John Wardrobe. I think the main issue in this case is whether there was notice and an opportunity for the party to be heard before their rights were affected. The only notice in this whole case or two notices, right, is the 1999 breach of contract claim that was filed in the State court that requested rescission, damages, and breach of contract. Now, this notice went to the bond insurers, and the bond insurers are sureties who cover failure of the contract. They are companies who protect the homeowner from economic loss from a breach of contract. These bond insurers do not generally insure intentional torts. So at the time of this 1999 breach of contract lawsuit, there's no notice to the debtor. There's no notice to the bond insurers that there's any allegations of willful malicious conduct. They say A4, which is embezzlement, larceny, breach of fiduciary duty, or intentional misrepresentation under 523A2. So there's no notice. Then in 2001, there's a bankruptcy filing. So the notice in 2001 to all of these parties is that there's an automatic stay. There's an automatic stay against all attempts to collect from the debtor on a prepetition claim. This is a prepetition claim. So in May, there's a motion on a hearing for relief from stay. As has been written many times in these briefs and at the bankruptcy appellate panel decision, there's a motion filed, and the motion says this case involves a claim for wardrobe for breach of contract. That's the notice that we have. It also says that this complaint, this motion for relief from stay, is based on Exhibit A. Exhibit A, again, is a 1999 lawsuit which has a breach of contract action. The motion also says we want to compel Mr. Wardrobe to participate as a witness in order for him to collect against the bonding companies. He needs to testify to certain things. So, again, the argument is they quote the Harris case, and the Harris case, the court said, fine. You can go against the third parties, but you cannot pursue the debtor. And in the Harris case, it was a fraud claim. They still said you can't pursue the debtor. So they further go, says, in this case, Ms. Griffin seeks the same relief as in the Harris case. The stay relief will only allow her to go to state court and proceed against the bonding companies. Okay. So that's the next notice. There's an order. There's much comment about the order. The order says basically the same thing. The bankruptcy appellate panel, I think, correctly said that the narrow relief side from state cannot be broadened retroactively by a loosely drafted language of the order. The order may not grant more relief than requested in the motion. Here what you hear is that retroactively, years later, they're attempting to broaden the language of the order and to say that they did not get the same. Well, the bankruptcy judge was, Judge Seib is a pretty savvy fellow, and he felt that the order was broad enough. And it would appear that this fellow, the debtor, may well have been a fairly unscrupulous fellow. There wasn't relief available from the sureties because of something. And he says, well, you know, this ought to be broad enough to get the judgment against the to cover a judgment against the debtor as well for this kind of thing. Don't we owe some deference to the bankruptcy judge's interpretation of his own order? Well, due respect to the judge, I'm in front of him every day. I do not think that he can broaden the scope of order. And there's no evidence that this is an unscrupulous person in either here or in that court. Also, the fact that the bonding companies did not get paid off is inconsistent with what was stated at the bankruptcy appellate panel. And what is not my understanding, in October 4th, 2001, and the position here in court is contrary to the. They didn't pay. Well, I think it says they said that we have settled our claims against the insurance company, and in their letter, Griffin's letter to the judge, she says that the defendant, John Wardrobe, has filed bankruptcy and all claims against him are stayed at this time. So she understands that the claims against Wardrobe are stayed. There's no evidence in the bankruptcy that this case is an unscrupulous, he's an unscrupulous fellow. And from what I understand, the bonding companies actually did pay some money. In fact, there were two $20,000 bonds. So I think that's not true. I think they did pay. But the interesting point here is that. In the question of whether or not we owe any deference to the judge's interpretation of his own order, what is the answer to that? Do we have some deference? We owe some deference to him. We just say, oh, he's wrong. Well, I think you have to look at the totality of the circumstances, right? And he may. And also, you know, this case was not fully, really fully briefed until the bankruptcy appellate panel. There are a lot of issues, a lot of documents that came up. And I think they're correct that the case should be remanded back to the judge for him to view all of this information and for him to make a decision. You know, in this case, there was a settlement conference on October 3, 2001. And then the case was settled. This letter came out to the judge saying we're settled, we're taking this off calendar, and we know that there's an automatic stay against Mr. Wardrobe. There was a discharge entered at that time and a final decree. So in October 2001, this case was basically over, and Mr. Wardrobe would have no reason, no notice whatsoever to think he would have to go back to court, because the motion only requested that he be compelled to testify to get a judgment against the insurance companies. In October 2001, the insurance companies have already been settled and they're out of the case. So in 2004, in January, his counsel withdraws, says he hadn't seen him in two years, which is consistent. He's gone. He doesn't think that he has any claim here. It's a dischargeable claim. So then there's no amended complaint file. There's no motion to amend the complaint. It's a no-asset case, so there would be no reason to get a judgment to collect any money. There are no insurance defendants. The 2001 letter says that the automatic stay is in place against Mr. Wardrobe. And then six months later, they go to trial. Now, nothing changed from their position that there was an automatic stay. And then now this procedure to collect against Mr. Wardrobe is obviously not part of the relief requested. When you amend a complaint to allege fraud, misrepresentation, and intentional harm, you are attempting to collect directly from the debtor. You are saying that my claim against the debtor is not discharged and I want to get the debtor's assets, notwithstanding the fact there's a discharge. So when they went forward in the State court, they violated the automatic stay. We understand your point. Okay. Thank you. Do you have any further questions? Thank you. Are there any further questions of the appellant? No. Thank you. Thank you. The case just argued is submitted for decision.
judges: Goodwin, Schroeder, Hawkins